UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Hilton Head Island Development Company, LLC and Coral Resorts, LLC, <br><br>        Plaintiffs, <br><br>v. <br><br>Joseph DuBois, Zach Naert, and Naert and DuBois, LLC, <br><br>        Defendants. | C/A No.: 9:13-cv-3510-SB <br><br>**COMPLAINT** <br><br>(False Designation of Origin/Unfair Competition in violation of 15 U.S.C. § 1125(a)(1)(A); False Advertising in violation of 15 U.S.C. § 1125(a)(1)(B); Service Mark Infringement in violation of S.C. Code Ann. § 39-15-1160; Injunction) |

Plaintiffs Hilton Head Island Development Company, LLC, and Coral Resorts, LLC, (herein after collectively referred to as "Plaintiffs") complaining of the Defendants Joseph DuBois, Zach Naert, and Naert and Dubois, LLC, would respectfully show unto this Court as follows:

## NATURE OF CASE

This lawsuit arises out of the actions of the Defendant attorneys and their law firm to advertise legal services and to solicit prospective clients by improperly purchasing and using the Plaintiffs' trademarks, service marks and/or names as keywords in online Search Engine Marketing ("SEM") campaigns. Upon entering these purchased keywords, the search results generated prominently feature a link to the Defendants' law firm. By this intentional and unfair conduct, Defendants have infringed upon the Plaintiffs' intellectual property rights.

## JURISDICTION AND VENUE

1. Plaintiff Hilton Head Island Development Company, LLC is a limited liability company organized under the laws of the State of South Carolina and registered to do business in the State of South Carolina.

2. Plaintiff Coral Resorts, LLC is a limited liability company organized under the laws of the State of South Carolina and registered to do business in the State of South Carolina.

1

3.      Upon information and belief, Defendant Joseph DuBois ("DuBois") is a citizen and resident of Beaufort County, South Carolina.

4.      Upon information and belief, Defendant Zach Naert ("Naert") is a citizen and resident of Beaufort County, South Carolina.

5.      Defendant Naert and DuBois, LLC ("Law Firm") is a limited liability company organized under the laws of the State of South Carolina and registered to do business in the State of South Carolina with a principal place of business in Beaufort County in the State of South Carolina.

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

7.      Additionally, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the Plaintiffs' pendent state law claims, which are brought pursuant to the statutory and common law of the State of South Carolina.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because the Defendants are located within this judicial district and division and a substantial part of the events giving rise to the Plaintiffs' claims were committed in the Beaufort Division of this Court.

## FACTS

9.      Plaintiff Coral Resorts, LLC ("Coral") is a vacation timeshare developer on Hilton Head Island, South Carolina, that has been developing the Island Links Resort.

10.     Plaintiff Hilton Head Island Development Company, LLC ("HHI Development") is a vacation timeshare developer on Hilton Head Island, South Carolina, that is currently developing the Coral Sands resort.

11.     HHI Development is a re-seller of Coral Reef and Port O'Call timeshare weeks.

12.     Island Links resort, Coral Sands resort, Coral Reef resort, and Port O'Call resort are commonly known by the trade name "Coral Resorts."

13.     Collectively, the Plaintiffs and their predecessors have been operating in the timeshare industry for more than twenty-four years.  Port O'Call resort was registered in 1989.

The next development was Island Links resort, which was first registered under a previous name in 1989, and then registered as Island Links in 2004. Coral Reef resort was registered in 1996. The most recent development is the Coral Sands resort, which was initially registered in 2003.

14. Plaintiffs have continuously used their trademarks, service marks and/or names by prominently displaying them on advertising for Plaintiffs' products and services.

15. On November 8, 2013, Plaintiff Coral registered a service mark incorporating the words "Coral Resorts" with the South Carolina Secretary of State pursuant to the South Carolina Trademarks and Service Marks Act, S.C. Code Ann. § 39-15-1105 *et seq.*

16. On November 8, 2013, Plaintiff HHI Development registered the service mark "Hilton Head Island Development Company" with the South Carolina Secretary of State pursuant to the South Carolina Trademarks and Service Marks Act, S.C. Code Ann. § 39-15-1105 *et seq*

17. Defendants DuBois and Naert are attorneys who are licensed to practice law in the State of South Carolina.

18. Defendants DuBois and Naert founded their Law Firm on or about January 2, 2013.

19. The Defendants' advertise on their website and elsewhere that one of their primary practice areas is "timeshare litigation."

20. Prior to founding their Law Firm, Defendants DuBois and Naert had never sued any of the Plaintiffs in a dispute related to timeshare ownership.

21. When one uses the keywords "timeshare attorney South Carolina," there are numerous advertisements for law firms, but the Defendants do not appear on the first or second page of the search results on the most common search engine pages.

22. Rather, the Defendants' SEM timeshare-related advertisements appear only in connection with the Plaintiffs.

23.     Thus, it appears that rather than target the timeshare industry generally, the Defendants have knowingly, intentionally, and in bad faith chosen to focus their efforts on the Plaintiffs' customers by purchasing the Plaintiffs' own trademarks, service marks, and/or names in SEM campaigns.

24.     For instance, Google AdWords is an Internet advertising service that allows for the purchase of keywords that, when entered into a Google search, produce advertisements for the purchaser of those keywords.  Google is the most widely-used Internet search engine in the United States and the world.

25.     For some or all of the time period since January 2, 2013, Defendants Naert and Dubois, and/or their Law Firm have paid to purchase the trademarks, service marks and/or names of the Plaintiffs and their resorts through Google AdWords including but not limited to the following:

   a.   Coral Resorts;
   b.   Coral Reef;
   c.   Coral Sands;
   d.   Island Links;
   e.   Port O'Call;
   f.   Hilton Head Island Development Company LLC.

26.     For some or all of the time period since January 2, 2013, Defendants Naert and Dubois, and/or their Law Firm have also purchased the names of Plaintiffs' general counsel and founder.

27.     Upon information and belief, the advertising agreement between Google and Defendants Naert, Dubois, and/or their Law Firm remains in effect today.

28.     Upon information and belief, one or more of the Defendants are or have been parties to a similar agreement for the use of the Plaintiffs' trademarks, service marks and/or names with Bing search engine for some or all of the time period since January 2, 2013.

29. Upon information and belief, one or more of the Defendants are or have been parties to a similar agreement for the use of the Plaintiffs' trademarks, service marks and/or names with Yahoo search engine for some or all of the time period since January 2, 2013.

30. Upon information and belief, one or more of the Defendants are or have been parties to a similar agreement for the use of the Plaintiffs' trademarks, service marks and/or names with Ask.com search engine for some or all of the time period since January 2, 2013.

31. Upon information and belief, one or more of the Defendants are or have been parties to a similar agreement for the use of the Plaintiffs' trademarks, service marks and/or names with AOL search engine for some or all of the time period since January 2, 2013.

32. Upon information and belief, one or more of the Defendants are or have been parties to a similar agreement for the use of the Plaintiffs' trademarks, service marks and/or names with DuckDuckGo search engine for some or all of the time period since January 2, 2013.

33. Upon information and belief, one or more of the Defendants are or have been parties to a similar agreement for the use of the Plaintiffs' trademarks, service marks and/or names with DogPile search engine for some or all of the time period since January 2, 2013.

34. Upon information and belief, one or more of the Defendants are or have been parties to a similar agreement for the use of the Plaintiffs' trademarks, service marks and/or names with Infospace search engine for some or all of the time period since January 2, 2013.

35. Upon information and belief, one or more of the Defendants are or have been parties to a similar agreement for the use of the Plaintiffs' trademarks, service marks and/or names with Excite search engine for some or all of the time period since January 2, 2013.

36. When the keywords set forth in paragraph 25 above are or were entered into one of the search engines listed herein above for some or all of the time period since January 2, 2013, a paid advertisement for Defendant Law Firm appears/appeared, and the advertisement contains/contained a link to the Defendants' website, www.lowcountrylegal.com.

37. When the keywords set forth in paragraph 25 above are or were entered into one of the search engines listed herein above for some or all of the time period since January 2, 2013, a paid advertisement for Defendant Law Firm appears/appeared and contains/contained the following headlines:

    a. In and prior to September 2013, "Ripped Off? Lied To? Scammed?"
    b. As of, on, or about October 10, 2013, "Timeshare Attorney HHI, SC – Ripped off on Hilton Head Island?"

38. Defendants Dubois, Naert, and/or their Law Firm intentionally purchased the Plaintiffs' trademarks, service marks and/or names – as set forth specifically in paragraph 25, above – as keywords in their online SEM campaigns for some or all of the time period since January 2, 2013.

39. Upon information and belief, one or more of the Defendants knowingly chose to schedule said advertisements to run at certain times of the day, which they perceived to be peak traffic times.

40. Upon information and belief, one or more of the Defendants knowingly paid for a certain number of "hits" per day which resulted from Plaintiffs' trademarks, service marks, and/or names being searched as keywords and then a consumer "clicking through" to the Defendants' website.

41. Upon information and belief, one or more of the Defendants knowingly paid extra to the search engine operators for the Defendants' advertisements to appear prominently at the top of or on the first page of search results for Plaintiffs.

42. Upon information and belief, Defendants have knowingly modified the content of their SEM campaigns featuring Plaintiffs' trademarks, service marks and/or names several times since January 2, 2013.

43. At no time did Defendants ask any of the Plaintiffs for permission to use or license Plaintiffs' trademarks, service marks or names as keywords in advertisements.

44. None of the Plaintiffs consented to the Defendants' purchase of or use of Plaintiffs' trademarks, service marks and/or names.

45. Upon information and belief, as a result of Defendants' improper purchase of and use of Plaintiffs' trademarks, service marks and/or names, Plaintiffs have been damaged and irreparably harmed.

**FOR A FIRST CAUSE OF ACTION**
False Designation of Origin/Unfair Competition
15 U.S.C. §§ 1117 and 1125(a)(1)(A)

46. Plaintiffs repeat and reallege each and every allegation of Paragraphs 1 through 45 as if restated herein verbatim.

47. Plaintiffs use the following words and other terms and phrases, and combinations thereof, to identify or distinguish their services from those of others in the vacation timeshare industry:

    a. Coral Resorts;

    b. Coral Reef;

    c. Coral Sands;

    d. Island Links;

    e. Port O'Call; and/or,

    f. Hilton Head Island Development Company LLC.

48. These words are capable of being registered as federal trademarks by the Plaintiffs and so constitute trademarks for the purpose of 15 U.S.C. § 1125(a).

49. Under federal law, a trademark is defined as including "any word, name, symbol, or device or any combination thereof" used by any person "to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127.

50. One or more of the Defendants used the Plaintiffs' trademarks in commerce by contracting to purchase, use and/or have said marks associated with Defendants in SEM

campaigns through Google AdWords as well as Bing, Yahoo, Ask, AOL, DuckDuckGo, DogPile, Infospace, and/or Excite.

51. Defendants' use of Plaintiffs' trademarks was without Plaintiffs' consent.

52. Defendants used Plaintiffs' trademarks in connection with advertising the Defendants' legal services.

53. The Defendants' use of the Plaintiffs' trademarks is likely to cause confusion, to cause a mistake, or to deceive consumers in one or more of the following ways:

   a. It implies an affiliation where none exists;
   b. Its implies a connection where none exists;
   c. It implies an association where none exists;
   d. It tends to indicate that the advertisements were originated by Plaintiffs;
   e. Consumers may interpret the advertisements as having been sponsored by Plaintiffs;
   f. Consumers may believe that the advertisements were approved by Plaintiffs;
   g. It may cause consumers to be confused as to how the Defendants' purchase and use of the Plaintiffs' trademarks as keywords are related to the Defendants' services;
   h. Defendants intended their SEM advertisements to confuse Plaintiffs' owners;
   i. Defendants intended their SEM advertisements to deceive consumers about the quality of Plaintiffs' products;
   j. Defendants intended their SEM advertisements to reach Plaintiffs' customers and to induce said customers to use Defendants' legal services rather than honoring contracts with Plaintiffs;
   k. Defendants intended their SEM advertisements to reach Plaintiffs' prospective customers to influence them not to do business with Plaintiffs;

    l. Defendants intended their SEM advertisements to convey a fear of possible harm to potential customers;

    m. Defendants intended to use Plaintiffs' trademarks to compete for Plaintiffs' customers; and/or,

    n. Cause consumers other confusion.

54. Plaintiffs have been damaged as a result of one or more of the Defendants' actions as described herein above.

55. Plaintiffs are entitled to recover Defendants' profits, any damages sustained by the Plaintiffs, the costs of the action, treble damages, and attorney's fees.

**FOR A SECOND CAUSE OF ACTION**
False Advertising
(15 U.S.C. §§ 1117 and 1125(a)(1)(B))

56. Plaintiffs repeat and reallege each and every allegation of Paragraphs 1 through 45 as if restated herein verbatim.

57. By purchasing Plaintiffs' trademarks, service marks and/or names – as described with specificity in Paragraph 25 – to be used in their own SEM advertisements, the Defendants have engaged in false advertising.

58. The Defendants made one or more false or misleading descriptions of fact or misrepresentations of fact in a commercial advertisement for their services by purchasing Plaintiffs' trademarks, service marks and/or names as keywords.

59. To the extent Defendants' use of Plaintiffs' trademarks, service marks and/or names implies that Defendants own or have the right to use said intellectual property, the representation is false.

60. To the extent Defendants' use of Plaintiffs' trademarks, service marks and/or names misrepresents the nature, characteristics, and qualities of Plaintiffs' products and services, the representation is false.

61. The false representations are material, in that they are likely to influence the Plaintiffs' customers in their purchase, rescission, and/or cancellation of purchases.

62. The misrepresentations actually deceive or have the tendency to deceive a substantial segment of those who search for the Plaintiffs or their resorts using the phrases listed in Paragraph 25.

63. The Defendants placed the false or misleading statements in interstate commerce.

64. Defendants' actions were willful.

65. The Plaintiffs have been and are likely to continue to be injured as a result of Defendants' misrepresentations.

66. Plaintiffs are entitled to recover Defendants' profits, any damages sustained by the Plaintiffs, the costs of the action, treble damages, and attorney's fees.

**FOR A THIRD CAUSE OF ACTION**
Service Mark Infringement
(S.C. Code Ann. § 39-15-1160 *et seq.*)

67. The Plaintiffs repeat and reallege each and every allegation of Paragraphs 1 through 45 as if restated herein verbatim.

68. Under the Service Marks Act, a service mark is defined, in relevant, part as "a word, name, symbol, or device or any combination of these used by a person to identify and distinguish the goods of that person, including a unique product, from those manufactured and sold by others to indicate the source of the goods, even if that source is unknown." S.C. Code Ann. § 39-15-1105(9). A service mark is defined as "a word, name, symbol, or device or any combination of these used by a person to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services, even if that source is unknown." S.C. Code Ann. § 39-15-1105(7).

69. The Plaintiffs have registered service marks pursuant to the South Carolina Trademarks and Service Marks Act ("Service Marks Act") for Coral Resorts and HHI Development.

70. These Plaintiffs' service marks are famous marks in that they are inherently distinctive, have long been connected with these Plaintiffs' products and services, have been extensively marketed for long periods of time, and are widely known within the vacation timeshare community.

71. Defendants did not have the consent of Plaintiffs Coral Resorts or HHI Development to use their service marks.

72. One or more of the Defendants used the service marks of the Plaintiffs in connection with advertising the Defendants' legal services through SEM campaigns.

73. Defendants are liable to Plaintiffs because Defendants' unauthorized use of the Plaintiffs' service marks is or was likely to cause confusion, to cause a mistake, or to deceive as to the source of origin of goods and services.

74. Defendants are also liable to Plaintiffs because Defendants' unauthorized use of the Plaintiffs' service marks is or was in an advertisement intended to be used on or in connection with the sale of goods and/or services in this State.

75. Defendants willfully committed the wrongful acts described herein with knowledge and/or in bad faith.

76. One or more of the Defendants have used the same service marks as the Plaintiffs to market legal services with the intent to cause confusion or mistake or to deceive.

77. As a result of the Defendants' unauthorized use of the service marks of the Plaintiffs, the Defendants have, upon information and belief, profited.

78. Defendants should be enjoined from use of the Plaintiffs' service marks.

79. The Plaintiffs are entitled to recover from Defendants actual profits derived from or damages suffered due to wrongful usage of service marks, treble damages, and attorney's fees.

### FOR A FOURTH CAUSE OF ACTION
Injunction

80. The Plaintiffs repeat and reallege each and every allegation of Paragraphs 1 through 45 as if restated herein verbatim.

81. The Plaintiffs have suffered irreparable harm as a result of the Defendants' SEM campaigns through Google AdWords, Bing, Yahoo, Ask, AOL, DuckDuckGo, DogPile, Infospace, and/or Excite.

82. The Plaintiffs are likely to succeed on their claims set forth herein.

83. No amount of damages will make the Plaintiffs whole if Defendants are allowed to continue using Plaintiffs' trademarks, service marks and/or names as keywords in SEM campaigns or otherwise.

84. Other than requiring the Defendants to terminate their contracts with as well as prohibiting the Defendants from entering into any new contracts with Google AdWords, Bing, Yahoo, Ask, AOL, DuckDuckGo, DogPile, Infospace, Excite and/or any other Internet search engine operators for the purchase of the Plaintiffs' trademarks, service marks and/or names as keywords, there is no adequate remedy at law.

### PRAYER FOR RELIEF

**WHEREFORE,** having fully set forth their Complaint, the Plaintiffs pray the Court enter an order and judgment awarding them all available relief against the Defendants including but not limited to the following:

1. Actual damages;

2. Consequential damages;

3. Punitive damages;

4. Treble damages;

5. Costs;

6. Attorney's fees;

7. All damages permitted by federal or state statute;

8. An injunction ordering the Defendants to terminate any and all contracts with Google AdWords, Bing, Yahoo, Ask, AOL, DuckDuckGo, DogPile, Infospace, Excite, and any other Internet search engine operators through which Defendants have purchased Plaintiffs' trademarks, service marks and/or names as keywords;

9. A permanent injunction enjoining Defendants and their officers, partners, agents, subcontractors, servants, employees, affiliates, related companies, and all others acting in concert or participating with them from:

    a. Purchasing keywords that are identical or substantially similar to Plaintiffs' trademarks, service marks and/or names;

    b. Making any use of the Plaintiffs' trademarks, service marks, names and/or terms confusingly similar thereto which is likely to confuse consumers into believing that the products and services that are the subject of Defendants' SEM advertising are sponsored by, affiliated with, or otherwise tacitly endorsed by Plaintiffs; and/or,

    c. Engaging in any other act constituting unfair competition or deceptive practices with Plaintiffs and their affiliated entities.

10. Any and all other relief this Court determines just and proper.

*Signature block on next page*

<u>s/Nekki Shutt</u>
Nekki Shutt (Fed. I.D. No.: 6530)
Kathleen M. McDaniel (Fed. I.D. No.: 10139)
Brian Lysell (Fed. I.D. No.: 11541)
CALLISON TIGHE & ROBINSON, LLC
1812 Lincoln Street
Post Office Box 1390
Columbia, South Carolina 29202
Telephone: 803-404-6900
Facsimile: 803-404-6901
nekkishutt@callisontighe.com
kathleenmcdaniel@callisontighe.com
brianlysell@callisontighe.com

**ATTORNEYS FOR PLAINTIFFS**

Columbia, South Carolina

December 17, 2013

14